THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
SALVATORE CATANIA, ALIAS SAM BERTOLINA, PLAIN-
TIFF IN ERROR.

Submitted January 29, 1926—Decided May 4, 1926.

1. C. was indicted for the murder of DeF. Near the body of DeF.
were found two cans of alcohol. In the room of C., in Vine-
land, New Jersey, a similar container was found. At the trial
of the indictment C. denied that DeF. was ever in Vineland.
The state offered the three containers in evidence. Objection
was made to the admission of the container found in C.'s room,
known as S-7. *Held,* that S-7 was admissible in evidence.
2. Where an article is admissible in evidence on behalf of the
state upon the trial of an indictment, it is not made inadmis-
sible because the article tends to show that the defendant is
guilty of a crime other than that for which he is on trial.
3. If there is in the trial of an indictment evidence offered tending
to support the charge laid in the indictment the question of the
defendant's guilt or innocence is one for the determination of
the jury, and it is proper for the trial court to overrule motions
made at the close of the state's case and at the close of the
testimony to direct a verdict for the defendant.
4. Evidence reviewed and the verdict rendered *held* not to be con-
trary to the weight of the evidence.
5. Remarks and rulings with reference to the necessity *vel non* of
interpreters for witnesses considered and *held* not to be preju-
dicial to the defendant.
6. Where no question is raised with reference to the empaneling
of a jury the preliminary examinations of jurors should not be
printed as a part of the record.
7. Opening addresses and summations of counsel form no part of
the record.

On writ of error to the Cumberland County Court of Oyer
and Terminer.

Before Justices Trenchard and Katzenbach.

For the plaintiff in error, *Morris V. McDonald.*

For the defendant in error, *Thomas G. Tuso.*

The opinion of the court was delivered by

KATZENBACH, J.   This case is before this court by virtue of a writ of error allowed by the Chancellor.   The writ was directed to the Court of Oyer and Terminer in and for the county of Cumberland.   It brings up the record and conviction of Salvatore Catania, *alias* Sam Bertolina, of murder in the first degree.   The jury recommended as a part of their verdict life imprisonment for the defendant.

The evidence offered at the trial in behalf of the state was to the effect that on January 12th, 1925, at Panther road, in the township of Landis, in the county of Cumberland, a body of a man who had been shot was discovered.   The body was frozen.   Near the body was a black suit case which was badly broken.   In the suit case were two cans of liquor.   The body was, subsequently, identified as the body of Luigi DeFrancesco, who was a resident of the city of Philadelphia.

On January 21st, 1925, the plaintiff in error (hereafter referred to as the defendant or Catania) had been traced to Newark, New Jersey.   He was found in a room in a tenement house at 51 Hayes avenue.   The chief of police and other police officers of Vineland, in the county of Cumberland, went to Newark and obtained the assistance of officers of the Newark police department in locating the defendant.   Early in the morning of the 21st day of January, 1925, officers went to 51 Hayes avenue.   The defendant was arrested.   He had been charged with the murder of DeFrancesco.   The defendant at the time of his arrest denied that he knew DeFrancesco.   He also denied that he had ever been in Vineland.   These denials were, subsequently, retracted. He then admitted that he had known the deceased when he boarded with the deceased's wife in Philadelphia.   He also admitted that he had been in Vineland.   The defendant had been engaged at Vineland in the autumn of 1924 as a mason's laborer.   He had worked up to a few days before Christmas. He lived at 618 Cherry street.   In Vineland he went under the name of Sam Bertolina.   The defendant's explanation of this *alias* was that he had been advised that whenever he went to a new place that he should give a new name so as to

be free from entanglements which might grow out of charges made by some woman. The defendant had been married. He had three children, aged seventeen, fifteen and twelve years. He had separated from his wife. He was not divorced.

DeFrancesco had come to his death by being shot in the back seven times. The bullets from the weapon used had entered different parts of the back of the deceased. One bullet had entered the neck and then had passed upward to the skull. Some of the bullets were found by the surgeons and physicians, who made an examination of the body, near the flesh in the front of the body. These bullets were extracted. There was found in a trunk belonging to the defendant, when arrested at Newark, bullets of the same calibre as those which had entered the body of DeFrancesco. There was also found at 618 Cherry street, Vineland, a can containing liquor. This can was similar to the two cans found at the place where the body of DeFrancesco was discovered.

The state contended that the murder had been committed by the defendant on December 23d, 1924. The evidence to support this contention was principally given by two taxicab drivers. One of the taxicab drivers was John Peluro. He testified that on December 22d, 1924, he saw the defendant disembark from the last train arriving at Vineland from Philadelphia. The train arrived at midnight. The defendant had with him a taller man. DeFrancesco was considerably taller than Catania. Catania is a short man. Peluro testified that he was asked by Catania to come to 618 Cherry street at four A. M. to take him to East Vineland. Peluro said that the taller man had with him a dark suit case. Peluro further testified that he did not go to 618 Cherry street at four o'clock in the morning because it was cold, and he had received a call to tow a couple of cars. He sent another taxicab driver to the place, but this man could not find the defendant. Daniel Sheldon, a taxicab driver, testified that he was approached at seven A. M., on December 22d, by Catania at the railroad station at Vineland. Catania was alone. Catania said to Sheldon that he wanted to go to East Vineland, and asked how much Sheldon would charge

to take him there. Sheldon replied $2. Catania told Sheldon
that he would give him $1.50. This was agreed upon.
Catania then asked that he be driven to 618 Cherry street
as he desired to get another man and a suit case. Sheldon
went to 618 Cherry street. Catania and a man carrying a
suit case got in the car and Sheldon drove them to East
Vineland. Catania paid Sheldon $1.25 and said that he
would give him the other quarter on the following day.
Sheldon said this would be all right. Sheldon then made a
charge of it upon his account book which, when produced in
court at the trial, showed that the charge was made on De-
cember 22d, 1924. This date differed from the date set forth
in the indictment. The state also offered the testimony of
Joseph Smaniotto. He was at his home at the corner of
Trenta street and Panther road, in East Vineland, a little
before eight A. M., on December 22d or 23d, 1924. He testi-
fied that he saw a taxicab which had the sign "taxi" in the
front. He positively identified the defendant as the man
he saw on that morning. This identification chiefly rested
upon the fact that the defendant was short. The witness
thought the defendant did not have an overcoat on. Another
man was with him. The body of DeFrancesco was found
about a quarter of a mile from the home of this witness. A
school teacher by the name of Louis Mounier testified that he
was driving to school after eight A. M., and near the corner
of Panther road and Trenta street he saw a man carrying an
overcoat on his arm.

The case of the state rested wholly upon circumstantial
evidence. Catania denied that he had killed DeFrancesco.
The defense relied upon testimony given by relatives of Cat-
ania that he was in Brooklyn at the time the state contended
he had killed DeFrancesco. There was also evidence offered
that DeFrancesco had been seen in Philadelphia on Christ-
mas day, 1924.

The first assignment of error argued relates to the admis-
sion in evidence of a can of alcohol marked *"Exhibit S-7."*
A witness by the name of Nicholas Nicossia testified that
he was visted by Catania at his home in Philadelphia.

Catania asked Nicossia to pack and ship a trunk which was at Vineland to Newark. Nicossia, with his brother, went to Vineland and packed and shipped the trunk. They found in the room of Catania at 618 Cherry street, Vineland, the can of alcohol in question. The court, over objection of defendant's counsel, admitted the can in evidence. In behalf of the defendant, it is now contended that the admission of this can was error. We think the can was properly admitted. Catania denied that he had ever seen DeFrancesco in Vineland. There was testimony, which has already been referred to, tending to show that DeFrancesco and Catania were at 618 Cherry street where the can *S-7* was found. This was the residence of Catania. There was evidence that the two men left 618 Cherry street together in a taxicab and were driven to East Vineland, near the place where the body of DeFrancesco was afterwards discovered. DeFrancesco had a black suit case with him. In this suit case, which was found near the body of DeFrancesco, were the two cans which were offered in evidence and marked *"S-1"* and *"S-2."* While the testimony is not clear that *S-7* resembled *S-1* and *S-2,* yet there is testimony which inferentially shows a similarity in the cans, because Catania, upon cross-examination, was unable to state which one of these cans he had had in his room, but admitted that he had had one of them there. This shows a similarity in the cans. As *S-7* was in the room of Catania at Vineland, and *S-1* and *S-2* were found near the body of DeFrancesco, the finding of *S-7* in the room of Catania in Vineland had some bearing upon whether or not DeFrancesco was in Vineland. A trial court in such matters is vested with a discretion. It is impossible to lay down any general rule that will be sufficiently definite to solve each question which may be presented. We think the trial judge acted within the latitude of the discretion with which he was vested in admitting the can in evidence. Articles found upon the person of a defendant are admissible in evidence, although of no materiality in the state's case. *State* v. *Laster,* 71 *N. J. L.* 586. We think the same rule applies to an article found in the residence of a defendant where the de-

fendant admits that the article belonged to him. We further cannot see that defendant suffered any manifest wrong or injury by admission of *S-7.*

The further argument is advanced on this point that as the can contained alcohol, the admission of it was prejudicial, as it tended to show the defendant's guilt of another crime, namely, possession of alcohol. There is no merit in this contention. The defendant was not being tried upon such a charge, but upon the charge of murder. If the can was admissible on the charge of murder, then it made no difference whether the possession of the can tended to prove another crime or not.

The second assignment of error argued in behalf of the defendant is that the court erroneously refused to direct a verdict of acquittal at the close of the state's case, as the evidence submitted was insufficient to sustain a conviction of murder as charged in the indictment.

The third assignment of error deals with the same question, as it brings up the refusal of the trial court to direct a verdict of acquittal at the close of the whole case. Counsel for the defendant contends that both these rulings were erroneous. These two points will be considered together. If there was testimony supporting the charge laid in the indictment, then the question of the defendant's guilt or innocence became one for the determination of the jury and not the court. *State* v. *Morehous,* 97 *N. J. L.* 285. We think there was testimony sufficient to support the crime in the indictment presented by the state to warrant the submission of the defendant's guilt to the jury. The defendant and DeFrancesco were acquaintances. They were seen by credible witnesses entering Vineland. They were at the residence of the defendant at the same time. They left this residence together in a taxicab and were taken to a place near where the body of DeFrancesco was later found. Later, the defendant was seen walking alone in this vicinity. DeFrancesco met his death from bullets fired by a revolver. A number of bullets of the same calibre were found among the possessions of the defendant. Some of the bullets, especially

the one passing through the skull of DeFrancesco, had an upward trend. Catania was short. DeFrancesco was tall. The bullets had entered the back of the deceased. An upward trend would be given to the bullets if fired by a shorter person than the deceased. The proof of these facts was, in our opinion, sufficient to present a question for the jury. It was therefore not error to overrule the motions made for the direction of a verdict in favor of the defendant.

The next contention made is that the verdict is against the weight of the evidence. After reading the evidence we are satisfied that the verdict is not against its weight. The outstanding facts proved have been referred to. We do not deem it necessary to again state them.

The next question to which our attention is directed in the briefs are to those assignments of error and specifications of causes for reversal which bring up what is termed the prejudicial attitude of the trial judge towards two witnesses called for the defendant by the name of Groce and Scaturro. It is contended that the remarks of the trial judge with reference to Groce not requiring an interpreter and Scaturro requiring one created a prejudice in the minds of the jury against the defendant. We see nothing in the language used which indicates any prejudice or bias towards either the defendant or the witnesses. The court merely indicated in the words used in its opinion as to whether or not an interpreter was required. We see no merit in this contention.

The final assignment and specification argued is that the charge of the court was academic and did not sufficiently instruct the jury as to the proper method of applying the principles of law expounded to the facts of the case. The court did not, it is true, comment upon the facts in its charge. If counsel desired any particular proposition of law to be charged, or any particular instruction to be given to the jury, it should have been embodied in the form of a request to charge. This was not done. A trial court is under no obligation to either comment upon the testimony or to tell the jury, after charging the principles of law which govern the case, as to how these principles should be ap-

plied to the particular facts of the case. There was no exception taken to the charge.

There is one matter in the consideration of this case to which we think attention should be called. There is printed in the record the preliminary examination of all jurors called whether accepted or challenged. No question is raised with reference to empaneling of the jury. There is also printed the opening addresses of counsel to the jury and their summations of the evidence. These form no part of a record. The defendant was impecunious. The testimony had to be transcribed and printed at the expense of the county of Cumberland to give the defendant this review. The matter referred to should not have been embodied in the record even if the expense were borne by the defendant. To impose this expense upon the county is a waste of its funds.

Finding no error in the trial of the defendant, the judgment of conviction is affirmed.